CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 8 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| KEVIN BALLANCE, | ) | CASE NO. 7:15CV00645 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Kevin Ballance, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials punished him for refusing to sign an unconstitutional Release of Liability form regarding his personal property and unlawfully seized part of his income. The matter is currently before the court on cross motions for summary judgment. Finding no genuine issues of material fact in dispute on which Ballance could prevail in any constitutional claim, the court concludes that defendants' motion must be granted, and plaintiff's motion must be denied.

### I. BACKGROUND

#### A. Ballance's Evidence

Ballance states the following sequence of events related to his claims.[1] On December 3, 2013, Ballance was transferred from Nottoway Correctional Center ("Nottoway") to River North Correctional Center ("RNCC") with several boxes of personal property items. RNCC Property Officer David Felts brought Ballance two boxes and told him that "'they' had stole[n] [him] blind" and "they were keeping his TV and MP4 music player as punishment for the law suit at

---

[1] Ballance's evidence (and his rebuttal evidence in the next section) is taken from his declaration, signed under penalty of perjury, and affidavits, submitted in response to defendants' motion for summary judgment, rather than from his unverified amended complaint.

Nottoway."[2] (Ballance Decl. ¶¶ 1-2, ECF No. 30.) Felts also told Ballance, "You are going to sign a waiver of liability form so you cannot sue anyone at RNCC, and that will take care of your law suit at Nottoway." (Id. ¶ 2.) Ballance refused to sign the form. Felts and Major Mullins told Ballance that he would not receive any personal property, including incoming mail from his family, subscription magazines or newspapers, or mail-ordered books; when such publications arrived, officials returned them to the sender and later ordered Ballance to cancel his subscriptions. Defendants also banned Ballance from having his personal hygiene products in his cell, such as soap, toothpaste, shower shoes, and deodorant. Officers searched his cell every two weeks to remove any hygiene items or magazines he might have acquired.[3]

Ballance allegedly filed more than sixty grievances about being denied his personal property. Defendant Walls refused to log or process any of these filings and eventually placed a restriction on the number of grievances Ballance could file.

On August 12, 2015, as Ballance was leaving the chow hall after eating breakfast, newly appointed RNCC Warden Walrath ordered officers to take Ballance to the gym, where they allegedly forced him to stand facing a wall for over an hour with his hands above his head. They then forced him to sit on the "concrete floor for another eight hours" while cells were being searched, before allowing him to return to his cell. (Id. ¶ 13.) Ballance alleges that he thereafter "feared" that if he went to the RNCC chow hall to eat, he would face similar punishment. (Id. ¶

---

[2] Ballance does not contend in this lawsuit that any defendant or official at RNCC stole these property items.

[3] Ballance filed a claim under Virginia Tort Claims Act ("VTCA") for the value of his property, but never received a response. Six months later, he filed a motion for judgment under the VTCA in the Grayson County Circuit Court in Independence, Virginia. The circuit court concluded that because Ballance's personal property was merely in storage and could be returned to him, he had not been deprived of it, and the Act did not apply; thus finding that Ballance had no cognizable claim, the circuit court dismissed the case.

Ballance also filed a warrant in detinue in the circuit court, seeking to force prison officials to return his property. The Court granted the defendants' motion to dismiss on the ground that a warrant in detinue did not apply to the circumstances. Ballance's appeal was unsuccessful.

17.) Ballance stopped eating any RNCC-provided meals. He states, "Walrath stopped me from eating for seven months because I refused to sign the [Release of Liability] form." (Ballance Aff. ¶ 6, at 2, ECF No. 61-10.)

Ballance also states that RNCC officials have seized and are holding $626.18 of his trust account monies until his release from prison. With five life sentences, plus terms of 161 years and six months in prison to serve, Ballance asserts that holding his funds until his release is an unlawful seizure.

### B. Defendants' Evidence and Ballance's Rebuttal

Property records at RNCC indicate that Ballance arrived at RNCC with four boxes of personal property on December 3, 2013. RNCC officials noted that Ballance's institutional record did not include a signed Release of Liability form. Officer Felts informed him that he could not possess personal property items in his cell at RNCC unless he signed such a form. This lengthy form states, in pertinent part:

> Each offender must complete this form prior to, and as a condition of, possessing or acquiring personal property while an offender [is] confined in a [VDOC prison facility]. . . .
> I understand that my possession of personal property, in addition to state issued property, in this facility is a privilege. From time to time, [VDOC] employees may store, transport, inspect, or otherwise control my personal property. I recognize that accidents or other events may occur which may result in the theft of, loss of, or damage to my personal property. The liability of the [VDOC] shall be limited to no greater than fifty dollars ($50.00) for any item of personal property and that reimbursement or replacement is limited to damage, loss or theft only when such property is in the possession of a [VDOC] employee . . . and shall not include normal wear and tear, or damage incidental to searches, transportation of personal property, or other incidents, including but not limited to, theft or damage by other offenders, disturbances, riots, fires and flood. Reimbursement will be limited to the actual depreciated value of the item at the time of damage or loss. Items with a value exceeding the limits specified in this procedure are retained solely at my risk.

In consideration of the above and except as noted in Operating Procedure ["OP"] 802.1, IV, B, Extent of Liability,[4] and in recognition and assumption of all risks and dangers of damage to, loss of, or theft of personal property, I agree to hold the [state, the VDOC,] and its employees harmless with regard to any loss of, theft of, or damage to my personal property. I further release the [state, the VDOC,] and its employees from any and all legal liability and claims which may arise with regard to my personal property, and agree not to bring any lawsuit . . . regarding my personal property or to recover money on account of any loss of, or theft of, or damage to my personal property.

. . . .

Notwithstanding the above, I retain all rights and remedies under the [VDOC grievance procedures] and I further recognize that my sole and exclusive right to seek recovery against the [state] or its employees regarding my personal property, or for any loss of, theft of, or damage to my personal property, is that provided by [OP] 802.1 and the [inmate grievance procedures] or by written appeal to the Unit Head. I further recognize that I am free to seek to make my own arrangements to insure my personal property with an insurance company of my choice.

(Felts Aff. Encl. B, at 9, ECF No. 56-4.) Ballance refused to sign this form. Accordingly, officials inventoried his personal property and placed it in storage.

The Release of Liability Form is only required for personal property items, including books, newspapers, magazines, clothing, and electronics.[5] Officer Felts states in his affidavit, and the property inventory form also indicates, that assorted commissary items, paperwork, and hygiene items were issued to Ballance on December 3, despite his refusal to sign the form. Ballance denies that he received any of his personal hygiene items on December 3, 2013. He avers that his mother "paid other inmates" to buy hygiene items for him. (Ballance Aff. ¶ 5, at 2, ECF No. 61-8.) He asserts that for 805 days, from December 3, 2014, until February 17, 2016, RNCC officials did not allow him to possess hygiene items. In July 2015, Ballance submitted a

---

[4] The section number listed in the form Ballance refused to sign in December 2013, matches the number for the Extent of Liability portion of the policy version that took effect in August 2012. (See OP 802.1, at 6, ECF No. 56-1.) The sections of the policy are numbered differently in the policy version that took effect in September 2015. (See Pl.'s Ex. K, at 2, ECF No. 61-13.)

[5] The property policy defines personal property as "[a]ny item belonging to an offender that has been acquired and authorized for possession by the offender, excluding authorized state-issued property." (OP 802.1(III), at 6, ECF No. 56-1.)

request for an indigent hygiene packet (containing toothbrush, toothpaste, shampoo, deodorant, comb, razor, and bar soap) that was approved, but he states that "Felts refused to give it to him." (Id. ¶ 7.) It is undisputed that Ballance did not make other requests for indigent hygiene packets.

Although Ballance could not possess the personal legal research and writing materials he had acquired before his arrival at RNCC without signing the release form, defendants state that he was allowed to receive and possess court documents, and Ballance has not disputed this fact. He also had access to the RNCC law library for legal research and could apply for indigent correspondence/legal packets that include pens, typing paper, carbon paper, envelopes, and a limited amount of postage. Institutional records indicate that Ballance was scheduled to attend the law library on at least 140 occasions during his confinement at RNCC, sometimes twice in one day.[6] RNCC records also reflect that Ballance mailed 28 legal mail items in 2015 and 21 legal mail items in January and February of 2016.

On August 12, 2015, Warden Walrath ordered an intensive interdiction at RNCC after receiving reliable information about potentially dangerous contraband on the compound. During this interdiction, all inmates were moved from the chow hall to the gymnasium, located approximately 100 yards away. They were instructed to place their hands on their heads while they were moved from one location to the other. Once inside the gymnasium, the inmates were permitted to either stand or sit on the wood floor of that facility during the time their housing unit was being inspected. Walrath states that he "never told Ballance that he would be punished if he

---

[6] Felts gave Ballance another opportunity to sign the Release of Liability Form on July 31, 2014, after he had filed this lawsuit. Again, Ballance refused to sign the waiver form. Felts then confiscated his personal property and completed the necessary Notices of Confiscation and Disposition forms as required under OP 802.1. Ballance was notified to provide an option for the disposition of his property or it would be destroyed on August 31, 2014. Ballance made no decision regarding how he wished to dispose of his property. The property was not destroyed, however.

5

ate food provided at [RNCC] or that he would be punished until he complie[d] with [VDOC] policies and 'waive[d] his right of access to the court.'" (Walrath Aff. ¶ 12, ECF No. 56-1.)

Ballance was transferred to Green Rock Correctional Center ("Green Rock") in February of 2016. Once again, he refused to sign the Release of Liability form. After withholding his property items for a week, Green Rock staff located a Release of Liability form signed by Ballance in 2005 that had no expiration date. The wording of the pertinent paragraphs of this waiver form is nearly identical to those paragraphs in the 2013 release form that Ballance refused to sign. The 2005 release form does not expressly mention the $50.00 liability limit, but states that "[t]he liability of the [VDOC] shall be limited to the amounts specified" by the property policy. (Hiatt Aff. Encl. A, at 3, ECF No. 56-3.) In reliance on this signed Waiver of Liability Form, staff then released Ballance's personal property items to him, and his personal property items being stored at RNCC were shipped to him at Green Rock. Ballance states, "At no time have I ever signed a Release of Liability form." (Ballance Aff. ¶ 5, at 2, ECF No. 61-10.)

Defendants state that ten percent of Ballance's income has been, and continues to be, placed in a holding account during his confinement at RNCC and at other VDOC prisons. Under Virginia Code Annotated § 53.1-43.1[7] and VDOC OP 802.2, governing inmate finances, VDOC officials must withhold and deposit "10 percent of any funds received by an inmate from any source" in that inmate's "personal trust account until the account has a balance of $1,000." Va. Code Ann. § 53.1-43.1. This withholding requirement does not apply to any inmate who is sentenced to death, to life without the possibility of parole, or to "a term that makes him ineligible for release, excluding the conditional release of geriatric prisoners pursuant to § 53.1-

---

[7] The court notes that the RNCC accountant stated the wrong statute section in her affidavit. (See Burcham Aff. ¶ 5, ECF No. 56-2.) Such a typographical error can have no impact on the validity of this evidence for purposes of the summary judgment analysis, however.

40.01, prior to 75 years of age." Id. "Funds in an inmate's personal trust account shall be paid to the inmate upon parole or final discharge." Id.

Because Ballance is eligible for discretionary parole, the VDOC will continue to automatically withhold ten percent of his incoming funds until the savings account exceeds $1,000. When defendants filed their motion, Ballance's trust account withholdings under § 53.1-43.1 totaled more than $600.

### C. Procedural History

Ballance filed his § 1983 complaint in November 2015 and the amended complaint in January 2016. Liberally construing the amended complaint,[8] he alleges that the defendants: (1) violated his due process rights by refusing to allow him to possess his personal property in his cell unless he signed the Release of Liability form as required by policy; (2) retaliated against him for refusing to sign the Release of Liability form; (3) violated his First Amendment right to receive books and periodicals, view television, listen to radio, write his novels, or communicate with family, because he refused to sign the Release of Liability form; (4) violated the Eighth Amendment by not allowing him to possess hygiene products unless he signed the Release of Liability form; (5) violated the Eighth Amendment by not allowing him to eat RNCC meals; and (6) violated his Fourth Amendment rights by unlawfully taking a portion of his income. As relief, Ballance seeks monetary damages and various injunctions.

---

[8] When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Defendants have filed a motion for summary judgment, and Ballance has responded. He has also filed a cross motion for summary judgment.[9] The court finds these motions ripe for disposition.[10]

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). In so doing, "the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). The non-moving party must "come forward with some evidence beyond the mere allegations contained in the pleadings" and may not rely on

---

[9] Ballance has also submitted numerous extraneous letters and declarations to the court about matters unrelated to the defendants and claims in the amended complaint. The court does not consider these documents to be properly presented to the court in this lawsuit and has not required the defendants to respond to them.

[10] Ballance has filed a motion to compel (ECF No. 60), seeking supplemental responses to some of his many interrogatories to the defendants; he claims that defendants "refused to answer" various questions or "lied" in response to certain questions. After review of defendants' interrogatory responses (ECF No. 62), the court concludes that defendants have fully and fairly answered or objected to the discovery requests posed to them. Therefore, the motion to compel will be denied.

8

"[u]nsupported speculation" to defeat a motion for summary judgment. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

B. Withholding of Property and Due Process

Ballance appears to claim that the Release of Liability policy unlawfully deprived him of a right to possess personal property items while in prison and required him to waive his right to access the courts. The court concludes that Ballance has no constitutional claim arising from the challenged policy. <u>See, e.g.</u>, <u>Bannan v. Angelone</u>, 962 F. Supp. 71 (W.D. Va. 1996) (rejecting constitutional challenge to VDOC policy requiring inmates to sign release of liability as condition of possessing personal property items).

First, Ballance admits that defendants did not cause his personal property items to be "lost or damaged." (Pl.'s Mot. Summ. J. 11, ECF No. 61-6.) He has not disputed defendants' evidence that the personal property boxes which arrived with him at RNCC in December 2013 were maintained in storage and later shipped to him at Green Rock. Thus, Ballance makes no claim that defendants have deprived him of ownership of his personal property.

Second, as an inmate, Ballance simply does not have the same rights to possession of his personal property that he enjoyed as a free citizen. "[T]he realities of running a corrections institution are complex and difficult [and] courts are ill equipped to deal with these problems." <u>Bell v. Wolfish</u>, 441 U.S. 520, 548 (1979). Therefore, "[t]he court must defer to the expertise of prison officials in determining what property inmates may possess while in custody" and under what conditions. <u>Marron v. Miller</u>, No. 7:13CV00338, 2014 WL 2879745, at *3 (W.D. Va. June 24, 2014), <u>aff'd</u>, 587 F. App'x 69 (4th Cir. 2014) (citing <u>Block v. Rutherford</u>, 468 U.S. 576, 591 (1984); <u>see also</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 528 n.8 (1983) ("Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests.").

9

Thus, "[u]nless other rights such as religion or speech are involved, jails may thus constitutionally disallow the possession of personal property." Bannan, 962 F. Supp. at 74 (citing other cases). Therefore, the court finds nothing per se unconstitutional about defendants' refusal to allow Ballance, without condition, to possess his personal property items.

Third, even if Ballance could prove some constitutionally protected right to possess personal property in prison, prison officials may lawfully impose reasonable restrictions on that right. See Turner v. Safley, 482 U.S. 78, 89 (1987) (holding prison regulation that infringes on inmate's constitutional rights is valid if "reasonably related to legitimate penological interests"). To determine if the VDOC's release of liability requirement is reasonably related to legitimate penological interests so as to be a permissible infringement on an inmate's constitutional rights, the court considers four factors:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

Lovelace v. Lee, 472 F.3d 174, 200 (quoting Turner, 482 U.S. at 89-92) (internal brackets omitted). So long as the court can conceive of an obvious and legitimate penological interest furthered by the challenged regulation, the first factor of the Turner standard is satisfied. See, e.g., Altizer v. Deeds, 191 F.3d 540, 549 (4th Cir. 1999) (finding "a fortiori a legitimate penological interest" in inspecting inmates' outgoing mail for contraband). Plaintiff carries the burden of proof under the Turner rational basis analysis to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126 (2003).

10

Ballance has not met his burden under Turner. The VDOC property policy itself, as well as the Release of Liability form, emphasizes the many risks inherent to the prison environment that an inmate's personal property will be damaged or lost. Without question, the Release of Liability requirement is reasonably related to the VDOC's legitimate interest in minimizing costs, by limiting the circumstances and amounts for which it will be liable for inmates' property losses and asking inmates to agree to use the grievance procedures instead of the courts for property reimbursement requests. Ballance offers no easy alternative by which the VDOC could accomplish these same goals, and the court finds none. Moreover, because the Release of Liability requirement applies only to personal property, and not state-issued property, inmates retain alternative means of exercising the rights that personal property items further. They can use the prison's library and law library for entertainment reading and legal research. They can obtain indigent hygiene items, correspondence, and legal packets, instead of purchasing and possessing a personal stock of hygiene products and writing items. Finally, removal of the Release of Liability requirement would undoubtedly impact VDOC budgets by requiring reallocation of prison resources to cover litigation and reimbursement costs. For these reasons, the court concludes that the VDOC policy requiring inmates to sign the Release of Liability form as a condition of possession of personal property in prison is constitutional under the Turner factors.

Fourth, Ballance has had adequate procedural protection. "[T]he requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (alteration in original)). To determine whether procedures provide adequate protection against erroneous deprivation, the court considers, "'[f]irst, the private interest that

11

will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" Id. at 224-25 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). The Release of Liability form itself, offered to Ballance on at least two occasions, notified him clearly that failure to sign the form would prevent him from possessing his property items and required him choose among his private interests—in possessing the property items or not. This procedure creates little chance of erroneous deprivation of the inmate's possession of his personal property, and as already discussed, furthers substantial VDOC administrative interests.[11]

Fifth, the challenged policy is not unconstitutional simply because it conditions the inmate's possession of personal property on his agreement not to seek compensation for any property loss or damage, subject to the VDOC's procedures and limitations. It is well established that an individual may knowingly and intelligently waive a constitutional right in exchange for an offered benefit. See gen. North Carolina v. Alford, 400 U.S. 25 (1970) (criminal defendant may waive right to have government prove his guilt beyond a reasonable doubt in exchange for benefit offered through plea bargain); Stephenson v. Rojas, No. 1:14CV319 TSE/TCB, 2014 WL 7442246, at *2 (E.D. Va. Dec. 31, 2014) ("Officials [did] not violate the First Amendment by requiring plaintiff to sign a release of liability form" when he refused his prescribed medications or by "disciplining him for his failure to follow such a policy"). Contrary

---

[11] Had Ballance suffered damage or loss to his personal property items during the transfer, he had adequate procedures under state law by which to seek reimbursement—under the property policy and grievance procedures or by filing a VTCA claim and subsequent state court action. See Va. Code Ann. § 8.01-195.3; Hudson v. Palmer, 468 U.S. 517, 533 (1984) (recognizing that neither negligent nor intentional deprivations of inmate's property by a state employee violate procedural due process "if a meaningful post-deprivation remedy for the loss is available").

12

to Ballance's characterization, the Release of Liability form does not require him to waive his right to access the court, as demonstrated by the fact that he has now pursued three court cases about his personal property. At most, the Release of Liability form requires him to choose to assume the majority of the risks that personal property items he possesses in prison may suffer damage or be lost. If he chooses not to assume this risk by refusing to sign the release, his personal property items stay safe, but cannot be in his possession in prison.

Finally, Ballance has no constitutional claim arising from his many complaints about the inefficiencies and misuses of the grievance procedures, including those he filed about not possessing his personal property at RNCC. Because inmates do not have a constitutional right to a grievance process, the alleged inadequacies of the provided policy have no constitutional significance and, thus, are not actionable under § 1983. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994).

For the stated reasons, the court finds no disputed fact on which Ballance could prove that defendants' policy or their application of that policy to him violated due process in any respect.[12] Therefore, the court will grant defendants' summary judgment motion and deny plaintiff's motion.

### C. Access to Courts and Retaliation

In his retaliation claim, Ballance contends that "the defendants cannot create a policy waiving [his] right of access to the courts, then punish him for refusing to sign it" by withholding his personal property items. (Compl. 7.) The court cannot find that Ballance's allegations state

---

[12] In some submissions, Ballance appears to challenge the state court proceedings and their outcomes as violative of his constitutional rights. He has no actionable § 1983 claim or appellate action in this court concerning these state court actions, however. Lower federal courts do not have jurisdiction to review the judgments of state courts. Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997). Jurisdiction for appellate review of state court judgments lies exclusively with superior state courts and, ultimately, with the United States Supreme Court. Id. at 731; 28 U.S.C. §1257.

any § 1983 retaliation claim, because defendants neither denied him access to courts nor punished him for exercising that constitutional right.

Inmates have a constitutional right to reasonable access to the courts. See Lewis v. Casey, 518 U.S. 343, 351-53 (1996). If the inmate retains "[t]he tools . . . to attack [his] sentences, directly or collaterally, and . . . to challenge the conditions of [his] confinement, then "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355. Ballance mischaracterizes his refusal to sign the Release of Liability as an exercise of his right to access the courts. This decision did not involve any attempt to pursue redress in a court of law concerning either his conviction or his conditions of confinement. Moreover, as discussed, the challenged policy did not force him to waive any right of access to any court, but rather, offered him the choice to possess his personal property in prison, subject to the limitations in the VDOC's property policy, or not to have use of that property at RNCC.[13]

---

[13] Ballance points to the following italicized portions of the Release of Liability form as constituting a complete waiver of his right to access the courts:

> In consideration of the above and except as noted in Operating Procedure ["OP"] 802.1, IV, B, Extent of Liability, and in recognition and assumption of all risks and dangers of damage to, loss of, or theft of personal property, *I agree to hold the [state, the VDOC,] and its employees harmless with regard to any loss of, theft of, or damage to my personal property. I further release the [state, the VDOC,] and its employees from any and all legal liability and claims which may arise with regard to my personal property, and agree not to bring any lawsuit . . . regarding my* personal property or to recover money on account of any loss of, or theft of, or damage to my personal property.
>
> . . . .
>
> Notwithstanding the above, I retain all rights and remedies under the [VDOC grievance procedures] and *I further recognize that my sole and exclusive right to seek recovery against the [state] or its employees regarding my personal property . . . is that provided by [OP] 802.1 and the [inmate grievance procedures] or by written appeal to the Unit Head.*

(Felts Aff. Encl. B, at 9, ECF No. 56-4.) The court finds no merit to Ballance's characterization of this document as barring his access to courts. The language of the Release of Liability form, as a whole, clearly preserves the inmate's right to seek reimbursement through VDOC procedures for the value of an item of personal property lost or damaged while in the possession of a state employee, up to $50.00 absent some other arrangement by the Unit Head. Moreover, the document itself presents, at the most, a defense that VDOC officials can raise in a court action. It does not prevent the inmate from bringing a claim in court, as Ballance's instant case demonstrates.

"Retaliation against an inmate for the exercise of his First Amendment right of access to the courts can support a claim for relief under § 1983." Thompson v. Clarke, 633 F. App'x 207, 208 (4th Cir. 2016) (citation omitted). As stated, Ballance's decision not to sign the Release of Liability form was not an exercise of his right to access the courts. Therefore, defendants' actions in response to Ballance's decision—withholding his personal property items in accordance with the property policy—did not constitute retaliation actionable under § 1983.

### D. First Amendment Right to Free Expression

In this claim, Ballance blames defendants for the effects of his decision not to sign the Release of Liability form. Because this decision prevented him, per policy, from possessing personal property, defendants did not allow him to possess in his cell his personally purchased television, radio, and writing materials, or his book manuscripts, and incoming subscription publications.[14] In essence, Ballance contends that the challenged policy thus deprived him of his First Amendment right to freedom of expression and speech.

"To further security measures [and other legitimate penological interests], prisons may often infringe upon an inmate's Constitutional rights." Ballance v. Virginia, 130 F. Supp. 2d 754, 760 (W.D. Va. 2000), aff'd sub nom. Ballance v. Rowlette, 11 F. App'x 174 (4th Cir. 2001) (citations omitted). As stated, a prison policy that impacts inmates' constitutional rights withstands constitutional scrutiny if it is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

---

[14] Ballance alleges in his unverified amended complaint that defendants interpreted the policy as preventing him from calling or writing letters to his family. (Compl. 9.) While full scale deprivation of an inmate's ability to receive personal mail from family would present cause for concern, Ballance has not presented a genuine issue of material fact showing that defendants imposed any such restriction. Specifically, he has not provided any affidavit, declaration, or other evidence identifying particular incoming personal letters that he was not allowed to receive and read at RNCC, or stating actions by defendants, personally, that interfered with his ability to receive personal letters or make telephone calls to family while he was confined at RNCC. Moreover, his submissions clearly indicate that he was able to communicate with his mother about sending money.

The court has already upheld the Release of Liability requirement under the Turner factors. As discussed, the policy is reasonably related to furthering legitimate VDOC interests, and Ballance retained access to other means to exercise his free expression rights, through the prison library and indigent packet writing and mailing materials. Moreover, Ballance could also have regained possession of his personal property for these purposes merely by signing the Release of Liability form. Finding no genuine issue of material fact in dispute on which Ballance could prevail in this First Amendment claim, the court will grant defendants' motion for summary judgment and deny Ballance's motion.

### E. Eighth Amendment Concerns

In his fourth and fifth claims, Ballance contends that defendants exposed him to unconstitutional punishment—by refusing to allow him hygiene items for 805 days, by requiring him to stand and then sit on a hard floor for hours on August 12, 2015, and by denying him prison meals from August 2015 to February 2016. This claim lacks merit.

While prison officials must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), "[t]o the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, only "extreme deprivations" can satisfy the objective element of an Eighth Amendment claim challenging conditions of confinement. Hudson, 503 U.S. at 9. An inmate plaintiff must show that a prison official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition,

he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993).

Ballance makes no showing that he suffered any physical injury as a result of the challenged policy or defendants' actions. Moreover, the court finds no evidence that defendants <u>denied</u> him access to his hygiene materials or food. They merely conditioned his possession of his personal property, including personally acquired hygiene items, on his signing the Release of Liability. At the most, the evidence indicates that Ballance may have deprived himself of institutional meals, based on his speculative fears purportedly arising from the sequence of events on August 12, 2015, when eating in the chow hall was followed by standing or sitting in the gymnasium for hours. His conclusory statement that "Walrath stopped me from eating for seven months because I refused to sign the [Release of Liability] form" is not supported as a factual matter, and the court need not accept it as true. <u>See, e.g.,</u> <u>Thompson v. Potomac Elec. Power Co.</u>, 312 F.3d 645, 649 (4th Cir. 2002) (finding on summary judgment that "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case.") (internal quotation and citation omitted). Finding no genuine issue of material fact in dispute on which Ballance could prevail in his Eighth Amendment claims, the court will grant defendants' motion for summary judgment and deny Ballance's motion.

F. Withholding of Trust Account Funds

In his final claim, Ballance contends that it is unfair to force him to save money for his release by withholding his money under Virginia Code Annotated § 53.1-43.1, when it is unlikely that he will ever be released. The court finds no constitutionally significant deprivation here. It is well established that whatever limited property rights Virginia inmates have in the monies in their inmate accounts are defined solely by state law. <u>See gen.</u> <u>Washlefske v.</u>

Winston, 234 F.3d 179, 185-86 (4th Cir. 2001) (discussing the fact that inmates have only limited property rights with respect to income they choose to place into inmate trust accounts). Because he has a parole eligibility date, the statute requires VDOC officials to save a certain percentage of his income for him, up to $1000. Thus, he has no right under state law to use those funds during his incarceration. Furthermore, by the terms of § 53.1-43.1 and VDOC operating procedures, Ballance retains the ultimate right to and possession of the money in his trust account upon his release from prison. Because VDOC has not "seized" permanent possession of the funds deposited in the trust account, and VDOC policy clearly notifies Ballance of the withholding requirement and the amounts withheld, he has no Fourth or Fourteenth Amendment claim concerning his lack of current access to the trust account monies.

## III. CONCLUSION

In accordance with the foregoing, the court will grant defendants' motion for summary judgment, and deny Ballance's motion for summary judgment. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendants.

ENTER: This 28th day of March, 2017.

Chief United States District Judge

18